UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| TOMMY WEBSTER, | ) | |
|---|---|---|
| Petitioner | ) | |
| vs. | ) | CAUSE NO. 3:16-CV-230 RM |
| | ) | (Arising out of 3:11-CR-67 RM) |
| UNITED STATES OF AMERICA, | ) | |
| Respondent | ) | |

OPINION and ORDER

At the end of a three-day trial in January 2013, a jury convicted Tommy Webster of possession with intent to distribute cocaine (Count 1), possession of a firearm in furtherance of a drug trafficking crime (Count 2), manufacturing marijuana (Count 3), possession with intent to distribute cocaine base (Count 4), and possession of a firearm after a felony conviction (Count 5). The court sentenced Mr. Webster in April 2013 to terms of 108 months on each of Counts 1, 3, 4, and 5, to be served concurrently with each other and consecutively with a 120 month sentence imposed on Count 2, with the term of imprisonment to be followed by concurrent three-years of supervised release on each count. His conviction and sentence were affirmed on appeal, United States v. Webster, 775 F.3d 897 (7th Cir. 2015), and his petition for certiorari was denied on May 26, 2015, United States v. Webster, ___ U.S. ___, 135 S. Ct. 2368 (2015).

Mr. Webster is now before the court having filed a timely *pro se* motion pursuant to 28 U.S.C. § 2255 in which he seeks to have his conviction and

sentence vacated. Mr. Webster claims in his petition that his trial counsel (Michael Rehak) provided ineffective assistance by failing to (1) object to the admission of secret audio recordings of conversations he had while detained in the back of a police squad car; (2) impeach and object to the testimony of government witness Shelton Scott and the government's narcotics expert; (3) object to imposition of sentencing enhancements for obstruction of justice and drug premises; (4) object to the admissibility of government's Exhibits 16 and 23 at trial; and (5) object to the admissibility of testimonial laboratory reports through surrogate witnesses.

28 U.S.C. § 2255 provides that if "the motion and files and records of the case conclusively show that the petitioner is entitled to no relief," an evidentiary hearing is not required. Based on a review of Mr. Webster's petition and the record of this case, the court concludes that the factual and legal issues raised by Mr. Webster can be resolved on the record, so no response from the government or hearing on the § 2255 petition is necessary. *See* Menzer v. United States, 200 F.3d 1000, 1006 (7th Cir. 2000) (hearing not required where record conclusively demonstrates that petitioner is entitled to no relief on § 2255 motion); Rule 5(a) of the Rules Governing Section 2255 Proceedings ("The respondent is not required to answer the motion unless a judge so orders.").

I. BACKGROUND

The court of appeals set forth a recap of Mr. Webster's March 11, 2011 arrest and the other relevant facts of this case in its consideration of his appeal,

United States v. Webster, 775 F.3d at 900-901, so the court won't repeat those facts unless relevant.

## II. Ineffective Assistance of Trial Counsel

To succeed on an ineffective assistance of trial counsel claim, Mr. Webster must show, first, that his attorney's performance was deficient — "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" — and second, that counsel's deficient performance prejudiced his defense — "that counsel's errors were so serious as to deprive [the defendant] of a fair trial, a trial whose result is reliable." Strickland v. Washington, 466 U.S. 668, 687 (1984); *see also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."). A strong presumption exists that counsel performed effectively. Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003).

The reasonableness of counsel's performance must be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances." Kimmelman v. Morrison, 477 U.S. at 381. "Even if counsel's performance was deficient, a petitioner must also show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' meaning 'a probability sufficient to

undermine confidence in the outcome.'" Eckstein v. Kingston, 460 F.3d 844, 848 (7th Cir. 2006) (*quoting* Strickland v. Washington, 466 U.S. at 694); *see also* Hardamon v. United States, 319 F.3d 943, 948 (7th Cir. 2003) ("To establish the requisite prejudice under the second prong of Strickland, the defendant must show a reasonable probability that, but for his attorney's performance, the result of the trial would have been different."). "In weighing the effect of counsel's errors, the court must consider the totality of the evidence. . . . A verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record." Eckstein v. Kingston, 460 F.3d at 848 (*quoting* Hough v. Anderson, 272 F.3d 878, 891 (7th Cir. 2001)).

*Ground 1*

Mr. Webster claims in Ground 1 of his petition that his counsel provided ineffective assistance when he didn't object to the admission of "secret audio recordings" of conversations between Mr. Webster and Frederick Jones that took place while the two were detained in the back of a police squad car on March 11, 2011. While Mr. Webster couches his complaints in Ground 1 in terms of "ineffective assistance of counsel," he argues that the audio recording shouldn't have been admitted into evidence at his trial. According to Mr. Webster, "It is clear that this audio recording was vague and violated [his] fundamental right to a fair trial." Petn., at 5. The court can't agree.

4

Mr. Webster's main complaint – that the recording was "illegally obtained" – was raised and resolved on appeal. *See* United States v. Webster, 775 F.3d at 903-904 ("Webster next contends that the district court erred in allowing the consideration of the taped and transcribed conversation that occurred in the squad car. He asserts that the recording of that conversation violated his Fourth Amendment right to be free from unreasonable searches and seizures. . . . We . . . hold that conversations in a squad car such as the one in this case are not entitled to a reasonable expectation of privacy, and therefore the recording of the conversation is not a violation of the Fourth Amendment."). "Once the claim has been rejected on direct appeal, that decision will be binding on the district court through the law of the case doctrine," United States v. Harris, 394 F.3d 543, 558 (7th Cir. 2005), and the issue can't be reconsidered in a § 2255 petition absent changed circumstances. Olmstead v. United States, 55 F.3d 316, 319 (7th Cir. 1995). Mr. Webster hasn't set forth any changed circumstances that would justify reconsideration or relitigation of claim already decided on appeal.

In addition to his claim that the audio tape was illegally obtained, Mr. Webster says his counsel was ineffective by not objecting on the grounds that that the authenticity of the audio recording wasn't established, the accuracy of the accompanying transcript was questionable, and the transcript contained no factual basis to conclude that he was the speaker. Mr. Webster complains, too, that the recording wasn't played in its entirety. He maintains Mr. Rehak should have objected to the government's submission of the recording and transcript.

The record belies Mr. Webster's claim that the audio recording wasn't properly authenticated. South Bend Police Officer Steven Hammer testified that while Mr. Webster and Frederick Jones were sitting in the back seat of his squad car, he turned on the in-car camera system, and government's Exhibit 49 (a copy of the VHS from his in-car camera system) was "a fair and accurate representation" of the time Messrs. Webster and Jones were in the backseat of the car. Trial Tr., at 230. A credible government witness offered testimony about the authenticity of the audio recording, and Mr. Webster "has pointed to nothing that would have had a reasonable probability of calling that testimony into question. . . . In light of the lack of any indication of tampering, [Mr. Webster's] counsel's failure to make a baseless challenge to evidence was not deficient." Sanders v. United States, No. 07-CV-792, 2009 WL 839295, at *5 (S.D. Ill. Mar. 31, 2009).

Mr. Webster next says his counsel should have challenged the accuracy of the transcript of the audio recording as questionable, specifically with respect to the speakers' identity. Use of the transcript was addressed at trial. Officer Hammer testified that he and two other officers reviewed the tape and prepared a transcript of the recording, designating "who was saying what or who we believed was saying what," as an aid to the jury. Trial Tr., at 232. Before the recording was played for the jurors, defense counsel agreed that the court should instruct the jury relating to the limited use of the transcript, and the court gave the jurors the following instruction:

6

> Ladies and gentlemen, [AUSA] Schaffer will be passing out to you copies of a transcript. As I understand it, this is offered as a transcript of what a few people believe is on Exhibit 49. Exhibit 49, which is the actual recording, is the evidence. Exhibit 50 is not evidence. It's simply given to help you as you listen to Exhibit 49, the recording. If at any point what you hear on the recording is different from what someone else thought it said and wrote down in this transcript, you are the jurors in this case, not whoever prepared the transcript, so go with what you hear, rather than what you see, if there is a conflict. So, again, the recording is the evidence. Exhibit 50, the transcript, is just to help you as you listen to that exhibit.

Trial Tr., at 233. The jurors heard the audio recording and could decide on their own whether the transcript was accurate and whether statements in the audio recording were made by Mr. Webster or by Mr. Jones. Mr. Webster hasn't alleged or argued that the jurors didn't follow or weren't able to follow that instruction, nor has he established that counsel was ineffective in this regard.

Mr. Webster lastly complains that his counsel should have objected that the audio recording wasn't played in its entirety, but he offers nothing to show how the remainder of the recording could have benefitted him or changed the outcome of the trial. Mr. Webster must come forward with more than his statement that "it is unknown if there are statements that could have helped the petitioner in other parts of the illegally obtained audio." Petn., at 4. "When a § 2255 petitioner faults his attorney for failing to present evidence, [the petitioner] bears the burden of demonstrating what evidence the attorney should have presented and that the presentation of such evidence had a reasonable probability of changing the result." Sanders v. United States, No. No. 07-CV-792, 2009 WL 839295, at *5

7

(S.D. Ill. Mar. 31, 2009). Mr. Webster hasn't done so and so hasn't shown the need for a hearing on this claim that his counsel was ineffective.

*Ground 2*

Mr. Webster's second claim of ineffective assistance is that his counsel didn't impeach material government witness Sheldon Scott. According to Mr. Webster, ATF Agent Scott wasn't present at the scene of Mr. Webster's arrest on March 11, 2011, so "it is unknown why [Agent Scott] testified to events to which he had no personal knowledge." Petn., at 7. Mr. Webster complains that Agent Scott incorrectly testified before the grand jury that when officers arrived at the Almond Court address on March 11, they met Mr. Webster at the front door of the house. Mr. Webster claims his counsel should have objected to Agent Scott's testimony and tried to impeach Agent Scott so the jury could "see the magnitude of the inconsistencies in this case." Petn., at 9.

Mr. Webster's memory of Agent Scott's testimony is flawed. Agent Scott was called as a witness at trial by the defense, not the government, and Mr. Webster's attorney asked Agent Scott about the grand jury testimony Mr. Webster references:

Q  [D]id you [*i.e.*, Agent Scott] testify and tell the Grand Jury that when officers came to the door at 816 Almond Court, the front door, that it was answered by Mr. Webster?

A  I believe so.

Q  And why did you say that?

A   It was a misunderstanding at the time about the description of the home, that I had a conversation with Investigator Goben. It was my understanding that the three investigators all went to the front door together. In talking to them separately, I didn't realize, at that point, Investigator Goben had gone to the back door.

Trial Tr., at 251-252.

The record establishes that Mr. Webster's counsel did question Agent Scott about the discrepancies in his grand jury and trial testimonies, and Agent Scott explained his initial misstatement. Because Mr. Webster's counsel was able to elicit testimony from Agent Scott that Mr. Webster now claims "would have put significant doubt in the jury's mind as to the petitioner's guilt," Petn., at 8, counsel's assistance wasn't ineffective, and Mr. Webster isn't entitled to any relief on this claim.

*Ground 3*

Mr. Webster claims that both "trial and appellate counsel" failed to object to the sentencing enhancements he received for obstruction of justice under U.S.S.G. § 3C1.1 and for drug premises under U.S.S.G. § 2D1.1. His complaints, however, relate only to objections not made at his detention hearing, trial, and/or sentencing hearing; he hasn't set forth any allegations or arguments relating to any actions taken or not taken by appellate counsel, so Ground 3 will be viewed as a complaint against his trial counsel only.

Mr. Webster is mistaken in his belief that his counsel didn't object to the obstruction of justice enhancement. Mr. Rehak argued to the court that while Mr.

Webster might have had some personal effects at the house on Almond Court, he wasn't a resident there. Mr. Rehak also objected to the obstruction enhancement based on his argument that Mr. Webster's testimony on that issue at his detention hearing didn't obstruct justice because Mr. Webster wasn't released from custody at that time. Sent. Tr., at 2-3, 5. That the court disagreed with defense counsel and concluded instead that Mr. Webster's statements about his place of residence were false and he did obstruct justice doesn't establish that his counsel provided ineffective assistance. *See* Sullivan v. United States, No. 15-1234, 2016 WL 1259371, at *10 (C.D. Ill. Mar. 29, 2016) ("[T]he fact that the objections were ultimately unsuccessful does not establish ineffective assistance.").

Mr. Webster also says his counsel should have objected to the imposition of an enhancement for maintaining a premises for manufacturing a controlled substance because, Mr. Webster says, the government didn't establish that he sold drugs at that house over an extended period of time. Mr. Webster misunderstands the basis for the enhancement. U.S.S.G. § 2D1.1(b)(12) provides for a two level increase in a defendant's base offense level "if the defendant maintained a premises for the purpose of manufacturing **or** distributing a controlled substance." (Emphasis added.) The evidence established that the premises was used for manufacturing marijuana. Trial Tr., at 16-17 (admission of Gov't Exhs. 9-11, pictures of the marijuana grow operation in basement of Almond Court residence as identified by South Bend Police Sergeant Kronewitter); *see also* Sent. Memo. (Apr. 17, 2013), at 2 ("Police found a 72-plant marijuana

grow operation in the basement of Mr. Webster's house, so his offense level is increased by two levels for maintaining a premises for manufacturing a controlled substance."); United States v. Webster, 775 F.3d at 900 ("The search of the residence revealed a marijuana grow operation, including 50 rooted plants, 38 cuttings, high-pressure sodium grown lights on timers, chemicals, and a computer that displayed the video from surveillance cameras."). Mr. Webster hasn't advanced any objection that his counsel could or should have made to that evidence that would have resulted in a more favorable sentence. Knox v. United States, No. 11-CV-2179, 2012 WL 640042, at *12 (C.D. Ill. Feb. 27, 2012) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel."). A defendant's lawyer has an obligation to be truthful and forthright with the court and has "no duty to make a frivolous argument," United States v. Rezin, 322 F.3d 443, 446 (7th Cir. 2003), and indeed is barred by the rules of professional ethics from doing so. Smith v. Robbins, 528 U.S. 259, 272 (2000). Mr. Webster isn't entitled to the relief he seeks based on this claim.

*Ground 4*

Mr. Webster also says his counsel was ineffective when he didn't object to the admission of government's Exhibit 16 (photograph of a jacket) and Exhibit 23 (a baggie with smaller baggies inside). Mr. Webster says the exhibits were improperly admitted because "there was no chain of custody for the tan jacket

because, strangely, it was never seized;" no evidence was presented establishing that the jacket belonged to him; the extra-large jacket "would not fit his large body (think People v. O.J. Simpson and the bloody glove);" no fingerprints were found on the drug packaging; and "several other, smaller-sized people [were] present at the house that evening to whom the drugs could have belonged." According to Mr. Webster, had his counsel "effectively objected and argued these points, the result of the petitioner's trial would certainly have been different. Therefore, petitioner has demonstrated incontrovertible prejudice by his counsel's failures." Petn., at 15.

Mr. Webster's counsel did, in fact, argue each of those points. In closing arguments, Mr. Rehak told the jury that there was "a lack of evidence in relation to Tommy Webster's guilt," Trial Tr., at 266, specifically noting that no fingerprints were found linking Mr. Webster to any crime at the Almond Court residence, Trial Tr., at 266; police didn't gather all the available evidence from the house to test for fingerprints, Trial Tr., at 267; the evidence didn't establish that Mr. Webster was living at the Almond Court premises on the night in question, Trial Tr., at 268-269; police testified that the jacket they found was size XL, but the jacket might not have been big enough for Mr. Webster, Trial Tr., at 269; other people were at the residence who were trying to evade the police, Trial Tr., at 269-270; no drugs or weapons were found on Mr. Webster's person when police patted him down, Trial Tr., at 271; no evidence was presented establishing that Mr. Webster distributed drugs or possessed the firearms found at the residence, Trial Tr., at

12

271; and Mr. Webster's presence at the scene of a crime and possible knowledge that a crime was being committed wasn't sufficient to establish his guilt. Trial Tr., at 272.

Mr. Webster relates scenarios he claims should have been suggested to the jury – the jacket wouldn't have fit him and the drugs found in the house might have belonged to others at the scene – and says that had his counsel suggested those theories, "the jury would have had more than enough reasonable doubt regarding the controlled substances found in a jacket's pocket to acquit him of that charge." Pen., at 15. But Mr. Webster's counsel did suggest those exact scenarios to the jury, and the jury found Mr. Webster guilty on all counts of the indictment anyway; that the jury didn't believe the defense's interpretation of the facts and evidence doesn't establish ineffective assistance of counsel. *See* United States v. Allen, 358 Fed. Appx. 697, 700, 2009 WL 5033917, at *3 (7th Cir. 2009) ("[T]he jury was entitled to credit [the witnesses'] testimony over any lack of physical evidence.").

*Ground 5*

Mr. Webster lastly claims his counsel was ineffective for not objecting to the admission of laboratory reports through surrogate witnesses. Mr. Webster maintains his Sixth Amendment right to confront witnesses was violated when he didn't have an opportunity to cross-examine Kristen Sturgeon, the forensic scientist who prepared the laboratory reports that identified the drugs found at

13

the scene; those laboratory reports were admitted into evidence through the testimony of other witnesses. Mr. Webster's claim of error in Ground 5 was raised and rejected on appeal.

In the appellate court's consideration of the fact that defense counsel didn't object to the admission of Ms. Sturgeon's reports through the testimony of Indiana State Trooper Brian Hoffman and South Bend Police Sergeant Michael Suth, the court concluded that "[t]here could be no harm to [Mr.] Webster in this case because the failure to present the testimony of the analyst who prepared the report had no impact on his defense, which did not challenge the existence of the drugs but contested only his connection to them. Nothing in the report addressed his connection to the drugs. Only the nature of the substances was presented in the testimony regarding the lab report, and that was not a contested issue at trial. Accordingly, the error in the admission of the forensic report evidence does not require reversal." United States v. Webster, 775 F.3d at 903. The court added: "Given the extensive grow operation found in the home, it certainly would have been reasonable for defense counsel to conclude that it would be futile to focus an attack on the nature of the substances found." United States v. Webster, 775 F.3d at 903.

"Once the claim has been rejected on direct appeal, that decision will be binding on the district court through the law of the case doctrine," United States v. Harris, 394 F.3d 543, 558 (7th Cir. 2005), and the issue may not be reconsidered in a § 2255 petition absent changed circumstances. Olmstead v.

14

United States, 55 F.3d 316, 319 (7th Cir. 1995). Mr. Webster hasn't set forth any changed circumstances that would justify reconsideration or relitigation of the claim that was already decided on appeal, so his request for relief on Ground 5 is barred.

IV. CONCLUSION

Mr. Webster's petition contains conclusory statements about alleged wrongdoing by his counsel, as well as challenges to the sufficiency of the evidence against him, but Mr. Webster hasn't established any error "so egregious that the trial was rendered unfair and the verdict rendered suspect." Hoffman v. United States, No. 3:09-CV-106, 2009 WL 1285906, at *3 (N.D. Ind. May 4, 2009). Mr. Webster hasn't detailed how the outcome of his trial would have been different given the government's overwhelming evidence against him, including evidence that tied him to the residence and statements he made in the patrol car that the police were searching "his crib" in an attempt to "kill [his] career." On appeal, the court found that a jury could interpret Mr. Webster's statements "as an acknowledgment that the residence was [his], and that he was operating a drug business from that residence that he was attempting to conceal from the police. That connection to the drug business provides a motive for the possession of the guns, which along with the evidence that the bedroom was Webster's and the proximity of the gun to the drugs, is sufficient to distinguish him from the innocent bystander." United States v. Webster, 775 F.3d at 906.

"To prevail on a claim of ineffective assistance of counsel, a petitioner must prove both deficient performance and prejudice." Winters v. Miller, 274 F.3d 1161, 1167 (7th Cir. 2001). Mr. Webster hasn't established that his trial counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by counsel's performance. Accordingly, the court concludes that because the claims raised by Mr. Webster were decided on appeal or have no merit, Mr. Webster isn't entitled to the relief he seeks and his petition filed pursuant to 28 U.S.C. § 2255 is DENIED [docket # 140].

SO ORDERED.

ENTERED:   May 12, 2016   

                                                 /s/ Robert L. Miller, Jr.   
                                              Judge, United States District Court

cc:   T. Webster
       AUSA Schaffer